Civil Action Number:  08 Civ. 7232 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DORRIT MATSON,

                              Plaintiff,

-against-

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, THE CITY OF NEW YORK and RICHARD J. CONDON,

                              Defendants..

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**MICHAEL A. CARDOZO**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-138
New York, NY 10007-2601
Tel: (212) 788-0866

MARIO FRANGIOSE
CHRISTOPHER A. SEACORD,
  Of Counsel

Matter No. 2008-029858

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT .............................................................................................................................. 6

    POINT I ......................................................................................................... 6

        PLAINTIFF HAS FAILED TO STATE A CLAIM
        UNDER 42 U.S.C. § 1983. ........................................................................ 6

    POINT II ...................................................................................................... 10

        THE COMPLAINT MUST BE DISMISSED WITH
        RESPECT TO DEFENDANT BOE. ....................................................... 10

CONCLUSION ........................................................................................................................ 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DORRIT MATSON,

                                                  Plaintiff,

                                                  08 Civ. 7232 (PAC)

        -against-

BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, THE CITY
OF NEW YORK and RICHARD J. CONDON,

                                               Defendants.

------------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Defendants Board of Education of the City School District of the City of New York ("BOE"), the City of New York, and Richard J. Condon, by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion, pursuant to Federal Civil Procedure Rule 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted.

Plaintiff, a teacher formerly employed by defendant BOE, filed the instant complaint on or about August 14, 2008, asserting a claim pursuant to 42 U.S.C. § 1983. Specifically, plaintiff alleges that the defendants violated her constitutional right to privacy by releasing a report that contained information regarding her medical conditions—fibromyalgia, chronic fatigue syndrome, and a bacteria infection.

The complaint must be dismissed in its entirety because plaintiff has failed to state a claim upon which relief can be granted. That is, while courts in this Circuit have

recognized the existence of a constitutional right to privacy regarding the status of one's medical condition, that right only extends to serious medical conditions, the disclosure of which is likely to invoke hostility, discrimination and/or intolerance from others. The medical conditions allegedly disclosed by the defendants in the instant matter fail to satisfy that standard, and, accordingly, the complaint must be dismissed.

## STATEMENT OF FACTS[1]

As a preliminary matter, defendant Richard J. Condon, the Special Commissioner of Investigation for the New York City School District ("SCI"), is not employed by defendant BOE, but rather, is a Deputy Commissioner of Investigation within the New York City Department of Investigation, a mayoral agency of the City of New York. Thus, the Office of the Special Commissioner of Investigation is a separate and distinct legal entity from the BOE. See, e.g., Campbell v. City of New York, 203 A.D.2d 504, 505 (2d Dep't 1994) (noting that it is well-settled that the Board of Education and the City of New York are separate and distinct entities).

The SCI was created in June 1990 pursuant to Executive Order No. 11 of the Mayor of the City of New York ("the Executive Order" or "E.O. 11")[2] and Chapter 34 of the New York City Charter. The Executive Order specifically requires the Commissioner of the New York City Department of Investigation ("DOI") "to appoint a Deputy Commissioner[3] of Investigation for the City School District of the City of New York, who will be independent from the Board of Education, and will be responsible for the investigation of corruption, conflicts of interest, unethical conduct and other misconduct within the school district of the City of New York." Pursuant to E.O. 11, the Special Commissioner has the following powers and duties:

> The [Special] Commissioner shall receive and investigate complaints from any source or upon his

---

[1] For the purposes of this motion only, the material facts as alleged in the complaint are deemed to be true.

[2] A copy of E.O. 11 is publicly available on the website for the SCI at the following hyperlink: http://www.nycsci.org/public/Executive%20Order.pdf.

[3] The title of this position was changed to "Special Commissioner of Investigation for the New York City School District" by Mayoral E.O. 34 dated January 3, 1992. See E.O. 34 annexed as part of E.O. 11, publicly available on the website for the SCI at the following hyperlink: http://www.nycsci.org/public/Executive%20Order.pdf.

> own initiative or at the direction of the Commissioner of Investigation regarding alleged acts of corruption or other criminal activity, conflicts of interest, unethical conduct, and misconduct . . . . The [Special] Commissioner may refer such matters involving unethical conduct or misconduct as he or she deems appropriate to the Board of Education, the Chancellor, a Community School Board, or Community Superintendent, as appropriate, for investigation, disciplinary, or other appropriate action . . . ."

E.O. 11; see also Bd. of Educ. v. Hershkowitz, 308 A.D.2d 334, 337-38 (1st Dep't 2003), appeal dismissed, 2 N.Y.3d 759 (2004) (discussing the SCI's role in a case where, after investigation by SCI, a high school chemistry teacher was charged with having engaged in sexually explicit Internet communications with a student at his school, having inappropriate personal conversations with at least one other student, and soliciting students to join him in a business venture).

Plaintiff herein is a former music teacher with defendant BOE who was assigned to the Bayard Rustin Educational Complex in Manhattan (hereinafter "Bayard"). See Complaint ¶ 16; SCI Report, annexed to the Declaration of Assistant Corporation Counsel Christopher A. Seacord ("Seacord Affirmation") as Exhibit "A," at 1.[4] At all relevant times, in addition to her employment with defendant BOE, plaintiff also had been serving as the director and conductor of the New York Scandia Symphony (hereinafter "the Symphony"), an organization which she founded in 1988. See Exhibit A, at 1.

---

[4] The SCI Report is both a document referred to by plaintiff in her complaint, as well as a document of which she has knowledge and upon which she relied when bringing the instant action. See Complaint ¶¶ 17-20. Accordingly, the Court may consider the contents of this report when resolving the instant motion to dismiss the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

In January 2005, Robert Hall, an assistant principal at Bayard, contacted the SCI to report that plaintiff had been conducting the Symphony while out on sick leave from her teaching assignment. See Exhibit A, at 1. A subsequent investigation revealed that, on six separate occasions between 2003 and 2005, plaintiff conducted concerts while out on sick leave or leave for restoration of health. See id. at 2-3. Accordingly, the SCI concluded that plaintiff had abused her sick leave and recommended that her employment with the BOE be terminated and that she be required to repay the BOE any salary to which she was not entitled. See id. at 3. The SCI's findings and conclusions were summarized in a letter and report to BOE Chancellor Joel Klein dated August 16, 2005 (hereinafter "the SCI Report" or "the Report"). As with all other reports substantiating charges against a BOE employee, the instant Report was posted on the SCI's website and, therefore, was publicly available. See id.[5]

In detailing plaintiff's sick leave abuse, the SCI Report necessarily included certain information regarding the medical conditions that plaintiff offered as justification for her absences. Specifically, the Report stated that plaintiff claimed to suffer from "fibromyalgia," which was characterized by "neck, shoulders, and upper and lower back pain." See Exhibit A, at 2. The Report also stated, perhaps erroneously, that "fibromyalgia" is also referred to as "chronic fatigue syndrome." See id. Finally, the Report refers to a note from one of plaintiff's physicians, which indicated that she "was under continued therapy for recurrent bacteria infection . . . ." See id. at 2 n.2.

---

[5] A redacted version of the report is publicly available at http://www.nycsci.org/reports/08-05%20Matson%20Dorrit%20Ltr.pdf. When first published, however, the SCI Report appeared on the website in its un-redacted form.

5

On or about August 14, 2008, plaintiff filed the instant complaint alleging that the defendants violated her constitutional right to privacy by publishing the Report, which, according to plaintiff, "disclosed private medical information." See Complaint ¶¶ 18-21. Accordingly, plaintiff claims that she is entitled to relief under 42 U.S.C. § 1983. See id. ¶¶ 27-29.

## ARGUMENT

## POINT I

**PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1983.**

Courts in this Circuit have recognized the existence of a constitutional right to the confidentiality of one's personal medical information. See, e.g., Powell v. Schriver, 175 F.3d 107, 111-12 (2d Cir. 1999); Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994). That right is not absolute, however, and extends only to those "serious medical conditions" that, if disclosed, are likely to invoke hostility, discrimination and/or intolerance from others. See Powell, 175 F.3d at 111; Doe, 15 F.3d at 267.

In this Circuit, courts have extended the constitutional right to confidentiality in one's personal medical information to three, and only three, serious medical conditions: HIV/AIDS, transexualism, and sickle cell anemia. See Doe, 15 F.3d at 267 (HIV/AIDS); Powell, 175 F.3d at 112 (transexualism); Fleming v. State Univ. of New York., 502 F. Supp. 2d 324, 343 (E.D.N.Y. Aug. 6, 2007) (sickle cell anemia). In each instance, the court's decision was predicated on consideration for the potential discrimination, hostility and/or intolerance that the plaintiff might suffer if the relevant medical condition was disclosed. Specifically, in Doe, the United States Court of Appeals for the Second Circuit concluded that individuals have a constitutional right to confidentiality in their HIV status, noting that "[a]n individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion but

6

to discrimination and intolerance . . . ." Doe, 15 F.3d at 267.  Similarly, in Powell, the Second Circuit extended the constitutional right to confidentiality to individuals who are transsexuals, stating that "transsexualism is the unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." Powell, 175 F.3d at 111.  Finally, in Fleming, the United States District Court for the Eastern District of New York found that the constitutional right to confidentiality also protected individuals with sickle cell anemia, citing the documented history of discrimination against individuals possessing the sickle cell trait.  See Fleming, 502 F. Supp. 2d at 342-43.

On the other hand, this Circuit is replete with cases where courts have found that a plaintiff's particular medical condition was not sufficiently severe or unusual to warrant constitutional protection.  For example, in Rush v. Artuz, the court dismissed plaintiff's right to privacy claim because his medical conditions—wrist injury, hernias, and urinary tract infection—did not constitute "personal matters of a sensitive nature."  See Rush v. Artuz, 2004 U.S. Dist. LEXIS 15333, at *10-*11, *36-*37 (S.D.N.Y. Aug. 6, 2004).  Similarly, in Taylor v. Macomber, the court held that the disclosure of plaintiff's knee condition did not rise to the level of a constitutional violation.  See Taylor v. Macomber, 1999 U.S. Dist. LEXIS 8016, at *9-*10 (S.D.N.Y. May 27, 1999).  In Taylor, the court distinguished those cases where a plaintiff's medical condition was found to be sufficiently serious and unusual to warrant constitutional protection, stating that, in those cases, "the courts were concerned with inmate harassment, ostracism, reprisals and other inflicted traumas that may follow the disclosure of an inmate's medical information by prison officials."  Id. at *10.  Noting that "[p]laintiff's knee condition cannot be said to engender the same possibility of hostility and intolerance from others," the court concluded that plaintiff's knee condition was not sufficiently serious to warrant

7

constitutional protection and granted defendants' motion to dismiss plaintiff's right to privacy claim. See id. at *10-*12. Courts in this Circuit have reached similar conclusions when confronted with a variety of medical conditions that were not likely to invoke hostility, discrimination or intolerance from others. See, e.g., Lee v. DelFavero, 2005 U.S. Dist. LEXIS 40928, at *10 (N.D.N.Y. Sept. 6, 2005) (back pain); Rodriguez v. Ames, 287 F. Supp. 2d 213, 220 (W.D.N.Y. Sept. 5, 2003) (proctitis); Cortes v. Johnson, 114 F. Supp. 2d 182, 185 (W.D.N.Y. Sept. 18, 2000) (back and leg pain).

In this case, it is clear that the medical conditions disclosed in the SCI Report are not the type of severe or unusual conditions that are entitled to constitutional protection from disclosure. Fist, as to the bacteria infection, the Report provides no details other than to say that it was "recurrent" and that it required plaintiff to reduce her activities and take medical leave. See Exhibit A, at 2 n.2. The Report implies, however, that the infection was a temporary condition that was treatable with therapy. See id. Thus, plaintiff's bacteria infection is similar to those temporary, treatable conditions that courts continuously have found not to be sufficiently serious to warrant constitutional protection. See, e.g., Rush, 2004 U.S. Dist. LEXIS 15333, at *10-*11, *36-*37 (wrist injury, hernias, and urinary tract infection); Rodriguez, 287 F. Supp. 2d at 220 (proctitis).

Similarly, plaintiff's fibromyalgia (which the Report also refers to as "chronic fatigue syndrome") is not the type of severe and unusual medical condition that is protected from disclosure under the constitutional right to privacy. As noted in the SCI Report, fibromyalgia is a condition characterized by pain and stiffness in the muscles and/or joints. See Exhibit A, at 2; see also Dorland's Illustrated Medical Dictionary 673 (29th ed. 2000). As such, it too is the type of condition that courts repeatedly have found to be insufficiently severe to warrant

8

constitutional protection from disclosure. See, e.g., Lee, 2005 U.S. Dist. LEXIS 40928, at *10 (N.D.N.Y. Sept. 6, 2005) (back pain resulting from a stroke); Cortes, 114 F. Supp. 2d at 185 (back and leg pain). Unlike HIV/AIDS, transexualism, and sickle cell anemia, there is simply no documented history of discrimination, hostility or intolerance directed at individuals suffering from fibromyalgia.

Finally, while never confronted with the specific scenario presented here, on at least one occasion, this Court has concluded that fibromyalgia and chronic fatigue syndrome did not constitute sufficiently severe or unusual medical conditions such as to entitle a plaintiff to protection from disclosure. That is, in Rankin v. New York Pub. Library, the plaintiff moved for leave to amend her complaint in order to proceed under a fictitious name, arguing that "disclosure of her identity would reveal private medical information which is 'highly sensitive and highly personal.'" Rankin v. New York Pub. Library, 1999 U.S. Dist. LEXIS 18565, at *3-*4 (S.D.N.Y. Dec. 1, 1999). Specifically, plaintiff feared that potential employers would obtain access to the Court's records and deny plaintiff employment because of her various medical conditions, which included fibromyalgia and chronic fatigue syndrome. See id. at *4. The Court denied plaintiff's motion, stating that there was no evidence to support a finding "that a social stigma is attached to Plaintiff's medical conditions in the same manner that one is attached to other medical conditions, such as AIDS." Id. at *5. Similarly, in the instant action, there exist no grounds for concluding that plaintiff's fibromyalgia, chronic fatigue syndrome, or bacteria infection are the type of serious and unusual medical conditions that, if disclosed, would subject her to potential hostility, discrimination, or intolerance from others. Accordingly, plaintiff's right to privacy claim must be dismissed.

## POINT II

### THE COMPLAINT MUST BE DISMISSED WITH RESPECT TO DEFENDANT BOE.

Finally, it should be noted that the complaint is completely devoid of any allegations of wrongdoing on the part of defendant BOE. Rather, the Report at issue in this matter was published by the SCI, a legal entity separate and distinct from defendant BOE. See Campbell, 203 A.D.2d at 505 (2d Dep't 1994). Accordingly, at the very least, the BOE must be dismissed as a defendant in this action.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that this Court grant their motion to dismiss the complaint in its entirety and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         January 16, 2009

                                      **MICHAEL A. CARDOZO**
                                      Corporation Counsel of the
                                        City of New York
                                      Attorney for Defendants
                                      100 Church Street, Room 2-138
                                      New York, New York 10007-2601
                                      (212) 788-0866
                                      cseacord@law.nyc.gov


By: _____/s/_____
     Christopher A. Seacord (CS 0821)
     Assistant Corporation Counsel

Mario Frangiose,
Christopher A. Seacord,
   Of Counsel.

11