**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
DORRIT MATSON,

                                Plaintiff,

      - against -

BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK,
THE CITY OF NEW YORK and RICHARD J. CONDON,

                          Defendants.

------------------------------------------------------------------------X

**Index No.:**
**08 CIV 7232 (PAC)**

**HON. CROTTY**

---

**MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

---

Yours, etc.,

BARRY D. HABERMAN, ESQ. (bh 2589)
Attorney for the Plaintiff
DORRIT MATSON
254 South Main Street, Suite 401
New City, NY 10956
845-638-4294

## TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                    1

STATEMENT OF FACTS                                                       1

STANDARD OF REVIEW                                                       7

ARGUMENT                                                                 9

POINT I                                                                  9

    THE PLAINTIFF HAS STATED A CAUSE OF ACTION
    PURSUANT TO 42 U.S.C. sec. 1983

POINT II                                                                 20

    DEFENDANT, "BOARD OF EDUCATION" IS A PROPER
    PARTY TO THIS ACTION

CONCLUSION                                                               22

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alifano v. Merck & Co., Inc., 175 F.Supp.2d 792 (E.D.Pa. 2001)………………….....12

Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir.1999)…………………………………..10

Caroselli v. Allstate Ins. Co., 2004 WL 407004 (N.D.Ill. 2004)………………….…..11

C.N. v. Ridgewood Board of Education., 430 F.3d 159 (3d Cir. 2005)…………………10

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957)………………………………….…8

Cortes v. Johnson, 114 F.Supp.2d 182 (W.D.N.Y. 2000)…………………………17,18

Crespo v. New York City Transit Authority, 2002 WL 398805 (E.D.N.Y.)…………….8

Doe v. City of New York, 15 F.3d 264 (2d Cir. 1994)……………………….…..9,10,16

Falor v. Livingston County Cmty. Mental Health, 2003 WL 21684183……………....11
    (W.D.Mich. 2003)

Fleming v. State University of New York, 502 F.Supp.2d 324……………10,11,13,14,18
    (E.D.N.Y. 2007)

Franklin v. District of Columbia, 163 F.3d 625 (D.C.Cir.1998)…………………….17,18

Gant v. Wallingford Board of Education, 69 F.3d 669 (2d Cir.1995)……………….…8

Goldman v. Belden, 754 F.2d 1059 (2d Cir.1985)………………………………………..8

Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir.2003)……………….………………..11

Harding v. Cianbro, 436 F.Supp.2d 153 (D.Me. 2006)………………………………….12

Holt v. Olmsted Township Board of Trustees, 43 F.Supp.2d 812 (N.D.Ohio 1998)……13

Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)……………17

Jackson v. City of Chicago, 293 F.Supp.2d 836 (N.D.Ill. 2003), aff'd,…………………11
    414 F.3d 806 (7th Cir.2005)

Jofen v. Epoch Biosciences, Inc., 2002 WL 1461351 (S.D.N.Y.)……..…………..2,8,21

LaBrecque v. Sodexho USA, Inc. 287 F.Supp.2d 100 (D.Mass.2003)………………….13

Lee v. DelFavero, 2005 U.S. Dist. LEXIS 40928 (N.D.N.Y. 2005)……………………16

Leon v. Johnson, 96 F. Supp.2d 244 (W.D.N.Y. 2000)……………………………16,17

Lindgren v. Camphill Village Minnesota, Inc., 2002 WL 1332796 (D.Minn. 2002)…...19

Mincey v. Dow Chemical Co., 217 F.Supp.2d 737 (M.D.La.2002)…………………..….11

O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005)……………………………………9,15

Pamela v. Hamilton County Sheriff's Department, IP02-0808-C-H/K (S.D.Ind. 2003)..19

 Paul P. v. Verniero, 170 F.3d 396 (3d Cir.1999)………………………………………..10

Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)……………..…17

Pouliot v. The Town of Fairfield, 184 F.Supp.2d 38 (D.Me 2002)………….…….…..19

Powell v. Schriver, 175 F.3d 107 (2d Cir.1999)………………………………14,16,17,18

Rankin v. New York Public Library, 1999 U.S. Dist. LEXIS 18565………………...14,15
    (S.D.N.Y. 1999)

Rodriguez v. Ames, 287 F. Supp.2d 213 (W.D.N.Y. 2003)…………………………16,17

Rodriguez v. McGraw-Hill Companies, Inc., 297 F.Supp.2d 676 (S.D.N.Y. 2004)…….11

Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir.2007)………………11

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)…………………………………..…….…2

Rush v. Artuz, 2004  U.S. Dist. LEXIS 15333 (S.D.N.Y. 2004)………………….…..18

Tappe v. Alliance Capital Management L.P., 2001 WL 1631405 (S.D.N.Y.)………….7,8

Tarshis v. Riese Org., 211 F.3d 30 (2d Cir.2000)………………………………………8

Taylor v. Macomber, 1999 U.S. Dist. LEXIS 8016 (S.D.N.Y. 1999)…………………..18

Tenbrink v. Federal Home Loan Bank, 920 F.Supp. 1156 (D.Kan. 1996)………………13

Vtech Holdings Ltd. v. Lucent Technologies Inc., 2001 WL 1380382 (S.D.N.Y.)………8

Webb v. Goldstein, 117 F. Supp.2d 289 (E.D.N.Y. 2000)…………………………....17

Weinstein v. Albright, 261 F.3d 127 (2d Cir.2001)………………………………………8

Weixel v. The Board of Education of The City of New York, 287 F.3d 138……………13
    (2d Cir.2002.)

Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)……………….…10,19

## **PRELIMINARY STATEMENT**

Plaintiff, Dorrit Matson, respectfully submits this Memorandum of Law in opposition to the Defendants' Motion to Dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Plaintiff filed a Summons and Complaint initiating the instant action with the Clerk for the Southern District of New York on August 14, 2008. The Complaint consists of one Cause of Action, alleging that the Defendants herein deprived the Plaintiff of a right or privilege secured by the Constitution and Laws of the United States in violation of the Plaintiff's rights under the provisions of 42 U.S.C. sec. 1983. The actual act was the Defendants' publication material which constitutes the Plaintiff's private medical history.

As set forth in the Complaint, this Memorandum of Law, supporting Affidavits and Exhibits, the instant Complaint, must not be dismissed pursuant to Fed.R.Civ.P 12(b)(6), as the Plaintiff states a claim which entitles the Plaintiff to seek relief in this Court.

The Plaintiff respectfully requests that the Defendant's Motion be denied, in its entirety, that the Defendants be ordered to Answer the Complaint and that the Court grant such other and further relief as the Court may deem just and proper.

## **STATEMENT OF FACTS**

The facts in this action are as set forth in Plaintiff's Complaint, the Attorney's Affirmation, the Affidavits and Exhibits attached therein. Said facts are incorporated herein, and for clarity, will be restated only as necessary. As the Defendants have moved

1

pursuant to Fed.R.Civ.P. 12(b)(6), the allegations in the…Complaint are accepted as true." <u>Jofen v. Epoch Biosciences, Inc</u>., 2002 WL 1461351 (S.D.N.Y.)    Additional information is provided consistent with the rulings of the Second Circuit.  "…[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." <u>Rothman v. Gregor</u>, 220 F.3d 81 (2d Cir. 2000)

The facts underlying this action are not in dispute.  The Plaintiff was an employee of Defendant, Board of Education of the City School District of the City of New York ("Board of Education").  There did come a time when the Defendants investigated the Plaintiff, alleging that the Plaintiff improperly used sick time and/or a leave of absence. (Defendants' Exhibit A.)  Notwithstanding the allegations contained in report issued by the Defendants, there never was a determination that the Plaintiff improperly used sick time and/or a leave of absence.  (Plaintiff's Exhibit 1, paragraph 16 therein, Plaintiff's Exhibit 8.)   The factual record indicates that the Defendant, "Board of Education" withdrew the charges.  (Plaintiff's Exhibit 1, paragraph 16 therein, Plaintiff's Exhibit 8). Notwithstanding the fact that the charges were withdrawn, the Defendants, to this very day, continue to make the report originally issued by the Defendants on August 17, 2005 available to the general public (although redacted to exclude stating certain medical information pertaining to the Plaintiff. (See Defendants' Memorandum of Law, page 5, note 5 therein.))

Defendant's Exhibit A is the document that was published by the Defendants. The document is a report, which contains a diagnosis of the Plaintiff's medical condition, and references conversations between investigators employed by the Defendants and the office of the Plaintiff's treating physician.  The report of Defendant, "Condon" stated: "The doctor later spoke with the assigned investigator by telephone.  Dr. Chao explained that Matson suffered from chronic fatigue syndrome, known as fibromyalsia (sic).  He added that the teacher's condition was brought on by physical or emotional stress…"  See Defendants' Exhibit A.

Defendants' report also repeats information that was contained in the Plaintiff's applications for a Leave of Absence.  Defendant, "Condon" quotes from the application stating in the Defendants' publication that the Plaintiff's "technical condition was "fibromyalsia" (sic)" and that the Plaintiff experiences "neck, shoulders, and upper and lower back pain."  (See Defendants' Exhibit A. and Plaintiff's Exhibit 7)  The Court is requested to note that said applications were on forms drafted by the Defendant, "Board of Education", and said forms contain the notation at the top "CONFIDENTIAL MEDICAL REPORT AND MEDICAL EVALUATION."   (See Plaintiff's Exhibit 1, paragraph 10, therein, Plaintiff's Exhibit 3, paragraph 5 therein, Plaintiff's Exhibit 9, paragraph 8 therein, Plaintiff's Exhibit 7.)  The portion of the document that is completed by the physician (in this case, Dr. Tsai Chung Chao) states "CONFIDENTIAL AND STRICTLY PRIVILEGED MEDICAL REPORT."  (See Plaintiff's Exhibit 9, paragraph 8 therein, Plaintiff's Exhibit 7.)

The use of the Plaintiff's private medical records, as provided to Defendants "Board of Education" and "City of New York" for purposes other than the granting of a

3

leave of absence was without the permission of the Plaintiff and was without the permission of Dr. Chao. (See Plaintiff's Exhibit 1, paragraphs 11, 12, 20 and 22 therein, Plaintiff's Exhibit 9, paragraphs 9, 12 and 13.) The use by the Defendants for investigating an alleged improper conduct by the Plaintiff was not a use authorized by the Plaintiff, nor was it a use contemplated by the very language contained in the Confidential Medical Report and Medical Evaluation. (See Plaintiff's Exhibit 7.) Again, as indicated by the language contained on the Confidential Medical Report and Medical Evaluation, the report was "FOR MEDICAL DIVISION ONLY." (See Plaintiff's Exhibit 9, paragraphs 9, 12 and 13 therein, Plaintiff's Exhibit 7.)

The second complete paragraph on the second page of the Defendants' report (Defendant's Exhibit A) consists of repetitions of conversations between an investigator and a doctor's office and publication of portions of a Confidential Medical Report and Medical Evaluation. All of information disclosed and/or discussed was done without the consent of the Plaintiff. (See Plaintiff's Exhibit 1, paragraphs 11, 20 and 22 therein.) Furthermore, at no time did the treating physician provide his authorization to publish private medical facts about the Plaintiff. See Plaintiff's Exhibit 9, paragraphs 9, 12 and 13 therein.)

Based upon the Defendants' report and a subsequent press conference held by the Defendants (Defendant, "Condon") in particular, New York newspapers repeated private medical facts which concerning the Plaintiff. The articles attributed the source of the information to the Defendants. (See Plaintiff's Exhibit 5.) "…she was suffering from chronic fatigue syndrome…according to a private doctor who treated her and who was quoted in the report." (See Plaintiff's Exhibit 5.) Joe Williams, a *Daily News* staff writer

wrote: "But Matson's doctor told investigators...she suffers from chronic fatigue syndrome..."  (See Plaintiff's Exhibit 5.)

The Court is also requested to note that the release of the Plaintiff's medical information to the public by the Defendants violates the Defendants' own regulations. The Regulation of the Chancellor in effect at the time (Number D-110) prohibited the release to the public of medical histories and/or medical records, stating that such release constitutes "An unwarranted invasion of personal privacy".  (The Court is requested to take judicial notice of the Regulations of the Chancellor, said regulations available to the general public on the website of the Chancellor (http://docs.nycenet.edu/docushare/dsweb/Get/Document-84/D-110          1-9-03.pdf) superceding the regulation of January 9, 2003.)

Although the following statement is not technically a "fact", the Defendants' purported reliance on the statements contained in Defendants' Exhibit A as "fact" is inappropriate, without foundation, and irrelevant to the instant proceedings.   The statements contained in Defendants' Exhibit A are nothing more than allegations, and as demonstrated by Plaintiff's Exhibit 8, were never proven by the Defendants.  At best the report drafted in the name of Defendant, "Condon" which was subsequently released on behalf of the Defendants, is nothing more than "grandstanding" for purposes entirely unrelated to the instant proceeding.   The proof of the allegations has never been established, and the entire report is merely a smearing of the Plaintiff's good name.

As concerns the Defendants' statement of facts, to the extent that such "facts" exceed or contradict the facts as alleged in the Plaintiff's Complaint, such "facts" are irrelevant, as the allegations of the Complaint are controlling in a motion to dismiss.

Thus, the Defendants' recitals as to the authority of Defendant, "Condon" to conduct an investigation of the Plaintiff (as well as other alleged violators of rules of the Defendant, "Board of Education" is of no significance.  The Plaintiff does not assert that Defendant, "Condon" does not have the authority to conduct investigations.  Rather, as demonstrated by the Plaintiff's Complaint, the facts alleged in the supporting Affidavits and Exhibits, the Defendants should be and must be estopped by the Court from using a bully pulpit to expose private facts for the sole purpose of causing individuals like the Plaintiff irreparable harm.

Included for submission to the Court are Affidavits, which set forth facts necessary for the Court to consider in this action.  The facts contained in the aforementioned Affidavits demonstrate the inapplicability of the cases cited by the Defendants in their Memorandum of Law.  The Plaintiff sets forth the following facts:

1.  The Plaintiff authorized the release of her medical information to Defendants, "Board of Education" and "City of New York" solely for use in the Plaintiff's application for a Leave of Absence. (Plaintiff's Exhibit 7.)

2.  The Plaintiff never authorized Defendants "Board of Education" and "City of New York" to release her medical information to the Defendant, "Condon."  (Plaintiff's Exhibit 7.)

3.  The Plaintiff never authorized the Defendants to release her medical information to the public.  (Plaintiff's Exhibit 1, paragraphs 11, 12, 20 and 22 therein, Plaintiff's Exhibit 4, paragraphs 19 and 22 therein.)

4.  The Plaintiff's treating Physician, Dr. Chao provided medical information to Defendants, "Board of Education" and "City of New York" solely for use in the Plaintiff's application for a Leave of Absence.  (Plaintiff's Exhibit 7, Plaintiff's Exhibit 9, paragraphs 8, 9 and 13 therein.)

5.  At no time did the Plaintiff's treating physician, Dr. Chao authorize the Release of the Plaintiff's to Defendant, "Condon."

(Plaintiff's Exhibit 7, Plaintiff's Exhibit 9, paragraphs 8, 9, 13, 14 and 15 therein.)

6.     The public dissemination of the Plaintiff's illnesses (fibromyalgia and/or chronic fatigue syndrome) has had an effect on how the Plaintiff is viewed as a conductor by individuals involved in the business of the performing arts.  (Plaintiff's Exhibit 1, paragraphs 17 and 18 therein, Plaintiff's Exhibit 2, paragraphs 5-14 therein.)

7.     The release of the Plaintiff's private medical information was and is in violation of a specific Regulation of the Chancellor (Number D-110).  (Plaintiff's Exhibit 1, paragraph 15 therein.)

8.     The release of the Plaintiff's private medical information by the Defendants has had an effect on the Plaintiff's mental state of mind. (Plaintiff's Exhibit 1, paragraphs 20 and 21 therein, Plaintiff's Exhibit 3, paragraphs 8-11 therein, Plaintiff's Exhibit 6.)

9.     New York City newspapers published private medical information of the Plaintiff, citing the Defendants as the source of such private medical information.  (Plaintiff's Exhibit 1, paragraphs 13 and 14 therein, Plaintiff's Exhibit 4, paragraph 20 therein, Plaintiff's Exhibit 5.

10.     The Defendants published the Plaintiff's private medical information.  (Defendant's Exhibit A, Defendant's Memorandum of Law at pages 4-5, Plaintiff's Exhibit 1, paragraphs 9, 11 and 12 therein, Plaintiff's Exhibit 4,  paragraphs 17, 18 and 20 therein.)

11.     Charges against the Plaintiff were withdrawn by the Defendant, "Board of Education."  There was never a finding of wrongful conduct by the Plaintiff.  The Plaintiff was not required to disgorge compensation to the Defendants, nor was there ever any determination that the acts of the Plaintiff were wrongful or criminal.  (Plaintiff's Exhibit 1, paragraph 16 therein, Plaintiff's Exhibit 8.)

## **STANDARD OF REVIEW**

The Defendants seek to have the instant action dismissed pursuant to Fed.R.Civ.P. Fed.R.Civ.P. 12(b)(6).  "A motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'", Tappe v. Alliance Capital Management L.P., 2001 WL 1631405

(S.D.N.Y.), *citing* Tarshis v. Riese Org., 211 F.3d 30 (2d Cir.2000). Tappe sets forth the standard for deciding a motion pursuant to Fed.R.Civ.P. 12(b)(6), "courts must take as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of the plaintiff", *citing* Weinstein v. Albright, 261 F.3d 127 (2d Cir.2001).

"On a motion to dismiss, [12(b)(6) motion] the allegations in the…Complaint are accepted as true." Jofen v. Epoch Biosciences, Inc., 2002 WL 1461351 (S.D.N.Y.), *citing*, Vtech Holdings Ltd. v. Lucent Technologies Inc., 2001 WL 1380382 (S.D.N.Y.). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor, Jofen at 1, *citing* Gant v. Wallingford Board of Education, 69 F.3d 669 (2d Cir.1995). "The Court's function on a motion to dismiss is 'not to weight the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'", Jofen at 1, *citing* Goldman v. Belden, 754 F.2d 1059 (2d Cir.1985). "Therefore, the defendant's present motion should only be granted if it appears that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." Jofen at 1, *citing* Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957).

Thus on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the burden is on the defendant to demonstrate that the complaint as pleaded by the plaintiff, fails to set forth any set of facts, which if proven, which would entitle the plaintiff to the matter relief sought. It is not enough for the defendant to prove that he has a stronger defense than the plaintiff's case, it is required that the defendant demonstrate, on the plaintiff's pleadings alone, and the documents supporting the plaintiff's pleadings, that "it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim to relief". Crespo v. New York City Transit Authority, 2002 WL 398805 (E.D.N.Y.).

8

## ARGUMENT

## POINT I

## THE PLAINTIFF HAS STATED A CAUSE OF ACTION PURSUANT TO 42 U.S.C. sec. 1983

The Plaintiff herein asserts that the unauthorized disclosure of her private medical information has violated her constitutional right to privacy. The Defendants herein assert that the right to privacy as concerns medical information only relates to three medical conditions, HIV/AIDS, transexualism, and sickle cell anemia. (Defendants' memorandum of law at 6.) The Defendants are in error. "It is well established that the individual right to privacy is protected by the Due Process Clause of the Fourteenth Amendment…The privacy right takes two somewhat different forms: the right to personal autonomy (i.e., the right to make certain choices free of unwarranted government interference) and the right to confidentiality (i.e., the right to hold certain information private)…Medical information in general, and information about a person's psychiatric health and substance-abuse history in particular, is information of the most intimate kind...in *Doe,* we held that…as a more general matter, 'the right to confidentiality includes the right to protection regarding information about the state of one's health.' [*Doe v. City of New York* 15 F.3d 264, 267 (2d Cir. 1994)] 15 F.3d at 267. In light of these precedents, we easily hold that O'Connor had a protected privacy right in the medical records sought by the Board." O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005) [The Board in O'Connor seeking psychiatric records and records of treatment for alcoholism] O'Connor found a right to privacy in a matter which was not HIV/AIDS, transexualism, or sickle cell anemia. The Defendants purported limitation on what

medical information is or is not protected as private is not consistent with the case law, except as stated below, as privacy rights relate to prison inmates.

"'[T]he right not to have intimate facts concerning one's life disclosed without one's consent" is 'a venerable [right] whose constitutional significance we have recognized in the past.' _Bartnicki v. Vopper,_ 200 F.3d 109, 122 (3d Cir.1999) (citing _Paul P. v. Verniero,_ 170 F.3d 396 (3d Cir.1999) (collecting cases))."   C.N. v. Ridgewood Board of Education., 430 F.3d 159 (3d Cir. 2005)   "Thus, we have deemed to be protected a private employee's medical information when sought by the government."   C.N. at 179.

"…the Supreme Court has recognized a constitutional privacy right protecting 'the individual interest in avoiding disclosure of personal matters,' _Whalen v. Roe_ 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and the Second Circuit has held that this right encompasses 'information about the state of one's health,' _Doe v. City of New York_ 15 F.3d 264, 267 (2d Cir. 1994), reasoning that 'there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over,' _id._" Fleming v. State University of New York, 502 F.Supp.2d 324 (E.D.N.Y. 2007)

The Defendants recognize a right to privacy, but assert that the public disclosure of the Plaintiff's medical history is not protected, stating that the particular illness was not severe enough to qualify for protection.  (Defendants' Memorandum of Law at pages 7-8)  "Without establishing a minimum standard that individuals must meet who seek to invoke the right to privacy in medical information, Doe indicates that the constitutional right to privacy in one's health status protects information about 'serious medical

condition[s],' 15 F.3d at 267, especially those that are likely to provoke 'not ... understanding or compassion but ... discrimination and intolerance,' id." <u>Fleming</u> at 342.

"…fibromyalgia can in certain cases result in severe disability is no longer an open question in the Second Circuit, for the Court of Appeals has recently held that 'fibromyalgia is a disabling impairment' <u>Rodriguez v. McGraw-Hill Companies, Inc.</u>, 297 F.Supp.2d 676 (S.D.N.Y. 2004) *citing* <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 108 (2d Cir.2003) "we have recognized that fibromyalgia can be a severe impairment…" <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234 (6th Cir.2007)

Case law has established that fibromyalgia and chronic fatigue syndrome are serious medical conditions which can be the basis for relief due to impermissible discrimination. "…fibromyalgia qualifies as a 'physical impairment' for purposes of the ADA and Rehabilitation Act analysis…[plaintiff's] fibromyalgia ... is a physical impairment.. Other courts have also found fibromyalgia to be a physical impairment. See, e.g., <u>Caroselli v. Allstate Ins. Co</u>., No. 01-C-6834, 2004 WL 407004, at *2 (N.D.Ill. Feb.23, 2004) (unpublished opinion) (accepting defendant's concession that fibromyalgia is a physical impairment); <u>Falor v. Livingston County Cmty. Mental Health</u>, No. 5:02-CV-60, 2003 WL 21684183, at *4 (W.D.Mich. May 30, 2003) (unpublished opinion) ('[The defendant] does not dispute that fibromyalgia constitutes a physical impairment, and the Court finds no reason to conclude that fibromyalgia is not a physical impairment.'); <u>Jackson v. City of Chicago</u>, 293 F.Supp.2d 836, 840 (N.D.Ill.2003), aff'd, 414 F.3d 806 (7th Cir.2005) (recognizing fibromyalgia as a physical impairment); <u>Mincey v. Dow Chemical Co</u>., 217 F.Supp.2d 737, 742 (M.D.La.2002) ('[I]t is clear that the fibromyalgia suffered by the plaintiff herein is an impairment.')…this Court

concludes that [the plaintiff's] fibromyalgia is a physical impairment within the meaning of the ADA and Rehabilitation Act." Harding v. Cianbro, 436 F.Supp.2d 153 (D.Me. 2006) "…fibromyalgia is a chronic pain illness characterized by musculoskeletal aches, pain and stiffness, soft tissue tenderness, fatigue, and sleep disturbances. http://www.fmaware.org/fminfo/brochure.htm. Although the most common sites of pain include the shoulders, back, pelvic girdle, neck, and hands, any part of the body can be involved. Id. Persons afflicted with fibromyalgia experience a range of symptoms of varying intensities that wax and wane over time. Id." Harding at 181.

"…physical impairment is fibromyalgia and chronic fatigue syndrome" Alifano v. Merck & Co., Inc., 175 F.Supp.2d 792 (E.D.Pa. 2001), denying defendant's therein motion to dismiss pursuant to Fed.R.Civ.P 12(6), holding that plaintiff stated claim for discrimination based upon disability, due to plaintiff suffering from fibromyalgia and chronic fatigue syndrome.

"Fibromyalgia is widely accepted in the medical community as a recognized, diagnosable syndrome, even if its etiology and process are not entirely understood.  It is a complex illness manifested by the presentation of several symptoms occurring together, most notably, persistent pain throughout the body.  Symptoms generally include muscle aches and pain, muscle tension, sleeplessness, fatigue, depression, headaches, mental confusion, forgetfulness, problems organizing thoughts and speech, and irritable bowel… Pain and other symptoms of fibromyalgia can be exacerbated by excessive physical activity and increased levels of stress, anxiety, tension, and depression.  Such flare-ups often substantially inhibit the ability of fibromyalgia sufferers to work, walk, run, lift objects, perform ordinary household functions and yardwork, and care for themselves.

**As a result, many people diagnosed with fibromyalgia are unable to maintain gainful employment.**  (emphasis added)   It is a long-term and usually permanent condition for which there is no known cure."   LaBrecque v. Sodexho USA, Inc. 287 F.Supp.2d 100 (D.Mass.2003)   In LaBrecque, the court therein denied the defendant's motion for summary judgment, finding that the plaintiff stated a cause of action for discrimination based upon the plaintiff's diagnosis of fibromyalgia.

See too Weixel v. The Board of Education of The City of New York, 287 F.3d 138 (2d Cir.2002.) where the Second Circuit in reversing a determination of the District Court held that fibromyalgia and chronic fatigue syndrome can form the basis of a cause of action for disability discrimination.  "Chronic Fatigue Syndrome is a disability within the meaning of the ADA" Tenbrink v. Federal Home Loan Bank, 920 F.Supp. 1156 (D.Kan. 1996) Also, Holt v. Olmsted Township Board of Trustees, 43 F.Supp.2d 812 (N.D.Ohio 1998) fibromyalgia and chronic fatigue syndrome form basis for cause of action for disability discrimination, denying defendant's  motion for summary judgment.

Fleming stands for the proposition that when an individual alleges that private medical information was disseminated, without permission, and such information can expose said  individual to impermissible discrimination, a cause of action is stated.  Case law establishes that suffering from fibromyalgia and/or chronic fatigue syndrome can lead to discrimination in employment.  Case law also establishes that fibromyalgia and/or chronic fatigue syndrome are physical impairments.  Medical privacy is a constitutional right, especially when the publication of the medical facts can lead to discrimination in employment.   As stated in Fleming, "…a constitutional privacy right exists where…disclosure 'potentially' exposes a plaintiff to 'discrimination and intolerance'

Doe 15 F.3d at 267." Fleming at 342.  In Fleming the court discussed and relied upon the established fact that laws were enacted to protect individuals from suffering discrimination based upon the fact that such individuals suffered from sickle cell anemia. Here, it is established that laws were passed to prevent discrimination in employment, and such laws include discrimination based upon an individual suffering from fibromyalgia and/or chronic fatigue syndrome, and thus, under the rationale set forth in Fleming, the Plaintiff herein has a constitutional expectation of privacy.  The expectation of privacy as concerns employment is greater than that found to exist by Powell [Powell v. Schriver, 175 F.3d 107 (2d Cir.1999)] .  "Powell thus indicates that the right [right to privacy] operates a fortiori in other contexts [outside of a prison], such as the workplace, where courts have taken a more expansive view of individual rights." Fleming at 345. The Plaintiff, in the supporting Affidavits demonstrates how the publication of private medical information has impacted the Plaintiff and employment in the world of the performing arts.  (See Plaintiff's Exhibit 1, paragraphs 17, 18 and 21, Plaintiff's Exhibit 2, paragraphs 5-14 therein.)

Cases cited by the Defendants in support of the motion to dismiss are distinguishable.  Rankin v. New York Public Library, 1999 U.S. Dist. LEXIS 18565 (S.D.N.Y. 1999) deals with the issue of a plaintiff who, in suing the defendant therein desired to keep her name private, as the cause of action related to various medical ailments.   The court therein held that the legitimate interests of justice, required identification of the parties to an action.  Fed.R.Civ.P. 10(a)    "The ultimate inquiry is whether Plaintiff's privacy right outweighs the long-standing policy of open judicial proceedings." Rankin at 2.  The issue is not identical to the issue raised herein.  In fact,

14

several of the items stated as not requiring anonymity have been held by various courts as requiring privacy of the medical facts disseminated.  "Medical information in general, and information about a person's psychiatric health and substance-abuse history in particular, is information of the most intimate kind."  <u>O'Connor</u> at 201 holding that the plaintiff therein had a right of privacy to his medical records (psychiatric health and treatment for alcoholism).  The right to privacy herein is the right of the Defendants to disclose private medical information of the Plaintiff as opposed to <u>Rankin</u>, which dealt with a requirement for the plaintiff therein to identify herself as required under the Federal Rules of Civil Procedure to initiate of cause of action for discrimination.

Before comparing the instant action to the other cases cited by the Defendants, the Court is respectfully requested to note that the Plaintiff herein was an employee of Defendant, "Board of Education", and that there is no allegation that the Plaintiff was incarcerated at any time relevant to this action.  At all times relevant to this action, the relationship  between the Plaintiff and Defendant, "Board of Education" was as an employee of said Defendant.  The medical information at issue was provided to Defendant, "Board of Education" by the Plaintiff's treating physician on forms that clearly state such information was Confidential.  (See Plaintiff's Exhibit 7.)  Any use of medical information by the Defendants outside of the permitted use (application for a Leave of Absence) was and is a violation of the Defendant "Board of Education's" regulations.  Not even the subpoena power of the Defendants can intrude upon the Plaintiff's doctor – patient relationship.  At no time did the Plaintiff consent to the use of her private medical information for any purpose outside of the application for a Leave of Absence.  At no time did the Plaintiff consent to the publication of her private medical

information by the Defendants.  The publication of the Plaintiff's private medical information had no relationship to the purpose for which such information was provided.

The Defendants rely upon a series of cases all which concern individuals who are incarcerated, purportedly to demonstrate that the violation of the Plaintiff's privacy is not actionable.  In all of the cases cited by the Defendants, the fact that the plaintiff therein was in jail was a major, if not the major component in the court's determination that said plaintiff's right to privacy was not violated.  For example, in <u>Lee v. DelFavero</u>, 2005 U.S. Dist. LEXIS 40928 (N.D.N.Y. 2005), the court therein analyzed the deprivation of privacy solely in the context of an individual who was incarcerated, making no finding whatsoever as concerns a relationship between an employer and an employee.

> "While **prison inmates** are divested of many significant constitutional rights as a result of their status, the limited right of privacy recognized in *Doe* has been extended to cover medical information regarding **prison inmates**, and in particular that which discloses certain types of medical conditions.  *See Powell, 175 F.3d at 112-13* (citing *Doe*).  Under the protections afforded by this limited right, 'a **prisoner's** interest in keeping a medical condition private varies with the condition.' *Rodriguez v. Ames, 287 F. Supp.2d 213, 220 (W.D.N.Y. 2003)* (citing *Powell, 175 F.3d at 111*).  This narrow constitutional right obtains in the case of an unusual medical condition which, if disclosed unnecessarily, would likely expose an **inmate** to ridicule, discrimination, or even potentially violence, particularly when the word of the condition is likely to spread through 'humor or gossip[.]' *Powell, 175 F.3d at 112*; *Rodriguez, 287 F. Supp.2d at 220*; *see also Leon v. Johnson, 96 F. Supp.2d 244, 252 (W.D.N.Y. 2000)*.  Conditions found sufficient to have triggered this qualified right of privacy include HIV positive status, as well as transexualism. [*9]  *Powell, 175 F.3d at 112-13* (transexualism); *Doe, 15 F.3d at 266-67 (HIV positive)*.
>
> *Powell* and the relative few cases in this circuit which have addressed the issue of disclosure of a **prison inmate's** medical information disclose the relatively narrow confines of the cause of action of which plaintiff now seeks to avail himself.  The cases in which the unauthorized disclosure of **prison** medical information has been found to give rise to liability involve **inmates** with unknown conditions which, if publicized, would subject the inmate to harassment, shame or ridicule. *Powell, 175 F.3d at 112-13*; *contrast Rodriguez, 287 F.Supp.2d at 220-21*; *Leon, 96 F.Supp.2d at 252*.  **Those cases also reveal that the liability inquiry is informed by whether legitimate penological interests are at stake**

**when the disclosure is made.** *See Powell, 175 F.3d at 112-13*; *Rodriguez, 287 F.Supp.2d at 220-21*; *Leon, 96 F.Supp.2d at 252*. **Thus, for example, the disclosure by prison officials of an inmate's medical information to law enforcement for purposes of an ongoing investigation** [*10] does not give rise to liability. *Webb v. Goldstein, 117 F. Supp.2d 289, 298-99 (E.D.N.Y. 2000)*; *contrast Powell, 175 F.3d at 112* ("Gratuitous disclosure of an **inmate's** confidential medical information as humor or gossip . . . is *not* reasonably related to a legitimate **penological** interest, and it therefore violates the **inmates** constitutional right to privacy") (emphasis added). Lee at 7.

In Rodriguez v. Ames, 287 F. Supp.2d 213 (W.D.N.Y. 2003), the court's inquiry was pointedly directed at the diminished expectations and rights to privacy of a prison inmate.  "Instead, this case concerns an embarrassing circumstance of prison life that does not rise to the level of a constitutional violation.  Prisoners do retain a limited right to bodily privacy…However, as with all constitutional rights, plaintiff retains that right in prison only insofar as it is consistent with his status as a prisoner. See Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  In this regard, there are many unfortunate and embarrassing circumstances prisoners must endure as part of their daily lives. Many prisoners, like the plaintiff here, share their cells with others and have very little privacy in certain daily activities.  However, 'routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society."' Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Rhodes, 452 U.S. at 347, 101 S.Ct. 2392)."  Rodriguez at 220.

In Cortes v. Johnson, 114 F.Supp.2d 182 (W.D.N.Y. 2000), the court therein stated that there was no constitutional right to medically qualified interpreters.  The issue therein was the plaintiff inmate's rights violated when the plaintiff was required to communicate medical information to a prison medical provider through another inmate, as there was no one else to interpret for the plaintiff inmate.  "In Franklin v. District of

Columbia, 163 F.3d 625, 638-39 (D.C.Cir.1998), a case directly on point, the District of Columbia Circuit held that 'Spanish-speaking prisoners with limited proficiency in English do not have a privacy right, derived from the Constitution, to force the District to hire bilingual medical personnel so that the prisoners may communicate their medical information only to such employees.' In reaching that conclusion, the court observed that 'for inmates lacking proficiency in English, having other inmates or correctional employees translate for them when they seek medical care is "one of the ordinary incidents of prison life" indeed, outside of prison it is doubtless an ordinary incident of everyday life for non-English speaking persons to receive help from others in order to communicate with their doctors.' Id., 163 F.3d at 638" Cortes at 184.

Similarly, in Rush v. Artuz, 2004  U.S. Dist. LEXIS 15333 (S.D.N.Y. 2004) the analysis therein dealt only with the publication of an injury or medical condition as relates to a prison inmate and the recognized diminished privacy rights of an inmate. Taylor v. Macomber, 1999 U.S. Dist. LEXIS 8016 (S.D.N.Y. 1999) also deals with privacy and a prison inmate.  In Taylor, the court therein relied, upon the Second Circuit's recognition that privacy issues must be balanced by legitimate penological interests.  "However while inmates retain a constitutional right that their medical records be kept private, that right is not absolute.  Rather, the government's disclosure of inmate medical records must be 'reasonably related to a legitimate penological interest.' Taylor at 7 citing Powell v. Schriver, 175 F.3d 107 (2d Cir.1999).  In summation, the cases cited by the Defendants all relate to the deprivation of privacy rights of prisoners or inmates, not of any individual outside of a penal institution (except for Fleming, which held that there was a constitutional privacy interest where the plaintiff could suffer discrimination

in employment upon disclosure of his medical condition).  It is disingenuous of the Defendants to argue that the privacy rights of the Plaintiff herein are to be defined by rights necessarily limited due to incarceration.

The Plaintiff's medical history is private and the act of releasing same to the public was a violation of the Plaintiff's rights.  "…employers are required to maintain medical records in a separate file from that of employee personnel files and treat them as a confidential medical records." Pamela v. Hamilton County Sheriff's Department, IP02-0808-C-H/K (S.D.Ind. 2003), denying production of an employee's medical records when plaintiff therein requested employee files.  Also Lindgren v. Camphill Village Minnesota, Inc., 2002 WL 1332796 (D.Minn. 2002), "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record."  See also Pouliot v. The Town of Fairfield, 184 F.Supp.2d 38 (D.Me 2002),  "The Fourteenth Amendment protects two different categories of privacy interests: '[o]ne is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.' Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)…both the First Circuit and this District have assumed that the first category protects individuals against dissemination of their confidential medical information…For purposes of a motion to dismiss, therefore, Plaintiff's allegation that Defendants communicated to the press medical information they had received in confidence is sufficient to state a claim for violation of Plaintiff's privacy rights protected by the Fourteenth Amendment. (Plaintiff therein alleging that the defendants violated his right to privacy by releasing to the press that the plaintiff suffered

19

from diabetes and that the plaintiff's medication was affecting his judgment, said information release as part of an investigation to the plaintiff's performance of his official duties.)   Based upon the foregoing, the facts alleged and established case law, the Defendants' motion to dismiss for failure to state a 42 U.S.C. sec. 1983 cause of action must be denied.

## POINT II

## DEFENDANT, "BOARD OF EDUCATION" IS A PROPER PARTY TO THIS ACTION

The Defendants request dismissal of the Defendant, "Board of Education" stating "…that the complaint is completely devoid of any allegations of wrongdoing on the part of the defendant BOE."   See Defendants' Memorandum of Law at page 10.   In this action, the Plaintiff has alleged that she was employed by Defendant, "Board of Education" (Plaintiff's Exhibit 4, paragraph 16 therein)  and that the Defendants, including Defendant, "Board of Education" released to the public a report (Defendants' Exhibit A.) which concerned the health of the Plaintiff.   (See Plaintiff's Exhibit 1, paragraph 9 therein, Plaintiff's Exhibit 4, paragraph 17 therein.)   The Plaintiff further alleged that the report disclosed private medical information., that the release was unauthorized and that said release violated the Defendants' own policies as concerns gathering and protection of medical information.   (See Plaintiff's Exhibit 1, paragraphs 11, 12, 15, 20 and 22 therein, Plaintiff's Exhibit 9, paragraphs 9, 12 and 13.) The Defendants do not provide any documents which conclusively refute the Plaintiff's allegations.   There is no denial that that Plaintiff was an employee of the Defendant, "Board of Education."

Documents provided herein demonstrate that the Plaintiff provided confidential medical information to Defendant, "Board of Education."   (See Plaintiff's Exhibit 1, paragraph 10, Plaintiff's Exhibit 9, paragraph 8 therein, Plaintiff's Exhibit 7.) Defendants' Exhibit A references examination of the Plaintiff's application for a Leave of Absence (Plaintiff's Exhibit 7.)   Plaintiff's Exhibit A also references examination of other records which relate to the Plaintiff and her medical records, including a note from a Dr. Martin Feldman.  All of these records were in the possession of Defendant, "Board of Education" and were allegedly made available to Defendant, "City of New York" and Defendant, "Condon" by Defendant, "Board of Education."   Defendant, "Board of Education" in violation of its own regulations (D-110) provided confidential private medical records to Defendant, "City of New York" and Defendant, "Condon" thereby violating the Plaintiff's constitutional right to privacy.    As all the allegations in the…Complaint are accepted as true." <u>Jofen v. Epoch Biosciences, Inc</u>., 2002 WL 1461351 (S.D.N.Y.), the Plaintiff, as a matter of law, is entitled to seek relief from the party that committed the offending acts, as alleged in the Complaint and demonstrated herein.

The Defendants have failed to show, on the facts pleaded in the within action, that Defendant, "Board of Education" is not a proper Defendant.  The Defendants' 12(b)(6) motion cannot be used to resolve factual issues or the merits of the case.  Defendant, "Board of Education" is required to file and serve an Answer pursuant to Fed.R.Civ.P. 9(a).

## <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff, respectfully seeks an Order of this Court denying the Defendants' Motion to Dismiss in its entirety, requiring the Defendants to answer the Complaint, together with such other and further relief as this Court may deem just and proper.

Dated: February 24, 2009
       New City, New York

<div style="margin-left: 50%;">

Respectfully submitted,


<u>s/ Barry D. Haberman</u>
BARRY D. HABERMAN, ESQ.
Attorney for Plaintiff
DORRIT MATSON
254 South Main Street #404
New City, NY 10956
845-638-4294

</div>

## AFFIRMATION OF SERVICE BY FEDEX OVERNIGHT DELIVERY

BARRY D. HABERMAN, an Attorney at law, hereby affirms, that said BARRY D. HABERMAN, ESQ. is the Attorney for the Plaintiff, DORRIT MATSON in the action entitled <u>DORRIT MATSON v. BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, THE CITY OF NEW YORK and RICHARD J. CONDON</u>, Index No.: 08 CIV 7232 (PAC), filed in the United States District Court, Southern District of New York; that the office of said attorney is 254 South Main Street, #404, New City, NY 10956; that on February 24, 2009, deponent served upon:

Honorable Paul A. Crotty                    Clerk of the Court
United States Court Judge                   United States District Court
Southern District of New York               Southern District of New York
United States Courthouse                    United States Courthouse
500 Pearl Street                            500 Pearl Street
New York, New York 10007-1312               New York, New York 10007-1312

Christopher Seacord
Assistant Corporation Counsel
The City of New York
Law Department
100 Church Street
New York, New York 10007

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Dismissal**

by depositing same with Federal Express Delivery Service on said date, directed to the above parties at the above addresses.  Said papers were also transmitted electronically to the Clerk of the Court.

                                            s/ Barry D. Haberman
                                            BARRY D. HABERMAN, ESQ.

1

—————— NOTICE OF ENTRY ——————

PLEASE  take notice that the within is a (*certified*)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.
BARRY D. HABERMAN, ESQ.

*Attorneys for*

*Office and Post Office Address*
254 South Main Street, #401
New City, New York 10956
845-638-4294

*To*
*Att*orney(s) for
——————NOTICE OF SETTLEMENT—————

Sir: - Please take notice that an order

of which the within is a true copy will be presented
for settlement to the Hon.

One of the judges of the within named Court, at

on
at          M.
Dated,

Yours, etc.
BARRY D. HABERMAN, ESQ.

*Attorneys for*
*Office and Post Office Address*
254 South Main Street, #401
New City, New York 10956
845-638-4294

*To*
*Attorney(s) for*

Index No.:  08 CIV 7232 (PAC)        Year  2008
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DORRIT MATSON

Plaintiff,

-against-

BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT THE CITY OF NEW
YORK, THE CITY OF NEW YORK and
RICHARD J. CONDON

Defendants.

**MEMORANDUM OF LAW**

BARRY D. HABERMAN, ESQ.

*Attorneys for* **Plaintiff, DORRIT MATSON**

*Office and Post Office Address*
254 South Main Street, #401
New City, New York 10956
845-638-4294

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated,

……………………………………..
Attorney(s) for