Civil Action Number:  08 Civ. 7232 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DORRIT MATSON,

                                                        Plaintiff,

                        -against-

BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, THE CITY
OF NEW YORK and RICHARD J. CONDON,

                                                        Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE COMPLAINT**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street, Room 2-122*
*New York, N.Y.  10007*

*Of Counsel: Christopher A. Seacord*
*Tel:  (212) 788-0866*
*Matter No. 2008-029858*

Mario Frangiose,
Christopher A. Seacord,
   Of Counsel.

**Page**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

    POINT I ...................................................................................................2

        THE EXTRINSIC EVIDENCE SUBMITTED BY
        PLAINTIFF IN OPPOSITION TO DEFENDANTS'
        MOTION TO DISMISS THE COMPLAINT IS
        IRRELEVANT AND SHOULD NOT BE
        CONSIDERED BY THIS COURT. ........................................................ 2

    POINT II ..................................................................................................4

        PLAINTIFF HAS FAILED TO STATE A CLAIM
        UNDER 42 U.S.C. § 1983. ........................................................... 4

CONCLUSION ....................................................................................................... 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DORRIT MATSON,

                                                                Plaintiff,

                                                        08 Civ. 7232 (PAC)
                        -against-

BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, THE CITY
OF NEW YORK and RICHARD J. CONDON,

                                                  Defendants.

------------------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

        Plaintiff, a teacher formerly employed by defendant BOE, filed the instant complaint on or about August 14, 2008, asserting a claim pursuant to 42 U.S.C. § 1983. Specifically, plaintiff alleges that the defendants violated her constitutional right to privacy by releasing a report that contained information regarding her medical conditions—fibromyalgia, chronic fatigue syndrome, and a bacteria infection.

        Defendants have moved to dismiss the complaint on the grounds that plaintiff has failed to state a claim upon which relief may be granted, as the medical conditions allegedly disclosed by defendants are not sufficiently severe or unusual to warrant constitutional protection. In response to defendants' motion to dismiss the complaint, plaintiff has submitted a series of documents, none of which cure the insufficiency of plaintiff's complaint. Plaintiff also has submitted a memorandum of law, dated  (hereinafter "Plaintiff's MOL"), in which she argues that her fibromyalgia and chronic fatigue syndrome are sufficiently serious to entitle her to

constitutional protection from disclosure.  For the reasons set forth below, as well as those contained in defendants' initial memorandum of law, dated January 16, 2009, plaintiff's argument's are unavailing and the motion to dismiss the complaint in this matter should be granted.

## STATEMENT OF FACTS

For a complete statement of the facts, defendants respectfully refer the Court to the Statement of Facts set forth in their memorandum of law in support of their motion to dismiss the complaint, dated January 16, 2009 (hereinafter "Supporting MOL").

## POINT I

### THE EXTRINSIC EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IS IRRELEVANT AND SHOULD NOT BE CONSIDERED BY THIS COURT.

With regard to the Exhibits now submitted in support of her complaint and in opposition to defendants motion to dismiss, plaintiff states as follows:

> The Exhibits demonstrate the potential for discrimination and the effect of such discrimination upon the Plaintiff.  The Exhibits also demonstrate that information provided to the Defendants marked "Confidential" and was provided by the Plaintiff for only one specifically identified purpose, and not release to the public in Defendants' Exhibit A.  The Exhibits demonstrate that the Plaintiff was never terminated from employment, that the charges were dismissed and that the Plaintiff was never required to disgorge compensation back to the Defendants. The Exhibits also demonstrate the republication of the Plaintiff's private medical information, citing the release of such information by the Defendants herein.

Attorney's Affirmation in Support of the Plaintiff, executed on February 24, 2009 (hereinafter "Haberman Affirmation"), at ¶ 9.  Despite plaintiff's apparent desire to resolve the entire action at this time, the only arguments raised by the defendants in their motion to dismiss the complaint are that:  (1) the medical conditions purportedly disclosed by defendants are not sufficiently severe or unusual to warrant constitutional protection from disclosure; and (2) defendant BOE is not a proper party to this action.  See Supporting MOL at 6-10.  Therefore, to the extent that plaintiff's extrinsic documents address issues other than those raised in defendants' motion to dismiss the complaint, they are immaterial and should not be considered by this Court.  That is, for purposes of this motion, it is entirely irrelevant whether:  (1) "the information provided to the Defendants [was] marked 'Confidential'"; (2) "Plaintiff was never terminated from employment";[1] or (3) that plaintiff's medical information subsequently was published by entities other than the defendants.

Additionally, while plaintiff alleges that her exhibits "demonstrate the potential for discrimination" allegedly caused by defendants' disclosure of her medical conditions, a review of those exhibits reveals that they do no such thing.  That is, the affidavits submitted by plaintiff do not set forth instances when she has been discriminated against because of her medical condition, but rather, consist entirely of speculative assertions that prospective employers will consider her to be "unreliable" or "undependable," and, therefore, will not be

---

[1] While it is irrelevant for the purposes of this motion, it is difficult to allow plaintiff's statements to this effect to go un-addressed.  While it is true that plaintiff's employment with defendant BOE was not terminated, that is only because she agreed to irrevocably resign from her position.

willing to hire her.[2]  See Affidavit of Dorrit Matson, executed on February 18, 2009 (hereinafter "Matson Affidavit"), annexed to the Haberman Affirmation as Exhibit "1," at ¶¶ 17-18; Affidavit of Andrew Ackers, executed on February 18, 2009 (hereinafter "Ackers Affidavit"), annexed to the Haberman Affirmation as Exhibit "2," at ¶¶ 9-14.  Such speculative assertions couched as factual allegations are meaningless and should be disregarded by this Court.  See L'Europeene de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. Oct. 18, 1988) ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.").

## POINT II

### PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1983.

As an initial matter, plaintiff appears to be confused about that nature of the instant action and the standard that is to be applied.  In their initial memorandum of law, defendants noted that courts in this Circuit have recognized a constitutional right to confidentiality which, in some cases, prevents certain parties from disclosing the fact that an individual suffers from a particular medical condition.  See Supporting MOL at 6-9.  However, as defendants have explained, such a right is not absolute and extends only to those "serious medical conditions" that, if disclosed, are likely to invoke hostility, discrimination and/or

---

[2] Again, while it is not necessary for purposes of the instant motion, a brief response to plaintiff's allegations on this point seems warranted.  While plaintiff alleges that knowledge of her medical conditions will cause potential employers to view her as "unreliable" or "undependable," it seems far more likely that any such a reaction would be the consequence of plaintiff's documented history of lying to her employer.  Indeed, plaintiff's statements to this effect demonstrate that it is not the disclosure of her medical condition that causes her concern, but rather, the revelation that she is a fundamentally dishonest, undependable and unreliable employee.

intolerance from others.  See Powell v. Schriver, 175 F.3d 107, 111-12 (2d Cir. 1999); Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994).  Thus, in the Second Circuit, courts have extended this right to three, and only three, serious medical conditions:   HIV/AIDS, transexualism, and sickle cell anemia.  See Doe, 15 F.3d at 267 (HIV/AIDS); Powell, 175 F.3d at 112 (transexualism); Fleming v. State Univ. of New York., 502 F. Supp. 2d 324, 343 (E.D.N.Y. Aug. 6, 2007) (sickle cell anemia).  In her memorandum of law in opposition to defendants' motion to dismiss the complaint, however, plaintiff cites O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005), for the proposition that the right to confidentiality in the status of one's medical condition extends to conditions other than those acknowledged by defendants.  See Plaintiff's MOL at 9-10.  Plaintiff's reliance on this case is misplaced.

In O'Connor, the relevant issue was not whether the defendants had violated the plaintiff's right to privacy by disclosing the fact that he suffered from a particular medical condition.  Rather, the issue was whether the plaintiff could be required to turn over his actual medical records to "the Wethersfield Board of Education . . . or any of its representatives."  See O'Connor, 426 F.3d at 201 (internal quotation marks omitted).  In this case, plaintiff does not allege that defendants disclosed her actual medical records to outside parties, merely that they disclosed the "fact" that she suffered from certain medical conditions.  It cannot reasonably be disputed that an individual's actual medical records are entitled to a far greater degree of protection than is the mere fact that she has been diagnosed with a particular condition.

In her memorandum of law, plaintiff has attempted to demonstrate that her alleged conditions satisfy the applicable standard by citing several cases which, according to plaintiff, demonstrate that individuals with fibromyalgia and/or chronic fatigue syndrome are likely to experience discrimination because of their condition.  See Plaintiff's MOL at 10-14.

Plaintiff's reliance on these cases is misguided.  First, plaintiff cites a number of cases purportedly demonstrating that fibromyalgia is a "physical impairment," a "medically determinable impairment," and a "disability" within the meaning of the Americans with Disabilities Act ("ADA").  See Plaintiff's MOL at 11-13.  However, for purposes of the instant motion, the fact that plaintiff's fibromyalgia can be considered a disability or a physical or medically determinable impairment is irrelevant.  As courts in this Circuit have made clear, when determining whether a particular condition is sufficiently serious or unusual to warrant constitutional protection from disclosure, the relevant inquiry centers not around the limiting nature of the particular condition, but rather, whether that condition is likely to invoke hostility, discrimination or intolerance from others.  See Doe, 15 F.3d at 267; Powell, 175 F.3d at 112; Fleming, 502 F. Supp. 2d at 343.  Indeed, because the right is meant to protect only that information which is inherently private, many debilitating physical ailments would not be protected from disclosure.  For example, paraplegia is no doubt a debilitating medical condition and a disability within the meaning of the ADA, but, due to the obvious nature of such a condition, an individual suffering from paraplegia generally would not be entitled to constitutional protection from disclosure of his condition.  See, e.g., Taylor v. Macomber, 1999 U.S. Dist. LEXIS 8016, at *9-*10 (S.D.N.Y. May 27, 1999) (stating that individuals do not have an expectation of privacy in conditions that they disclose to the public).  That is, the mere act of riding in a wheelchair likely would be sufficient to waive one's right to privacy regarding the status of his condition.  See id.; see also Allen v. American Tel. & Tel. Co., 1990 U.S. Dist. LEXIS 8756, at *6 (S.D.N.Y. July 16, 1990) ("Recognition of a constitutional right to privacy depends on whether the person seeking its protection has a legitimate expectation of privacy, one that is both subjective and recognized by society generally.").

6

On the other hand, with the exception of HIV/AIDS, the conditions recognized as warranting constitutional protection from disclosure are not necessarily "physical impairments" or "disabilities," as that term is defined by the ADA.  Indeed, the ADA explicitly states that it does not prohibit discrimination against transsexuals, as such individuals are not "disabled" within the meaning of the Act.  See 42 U.S.C. § 12211(b)(1).  Thus, for purposes of a right to privacy claim, it is irrelevant whether the particular condition at issue is a disability under the ADA.

Relying primarily on the decision of the United States District Court for the Eastern District of New York in Fleming v. State Univ. of New York, plaintiff argues that fibromyalgia and chronic fatigue syndrome not only are "physical impairments," but also that she is likely to suffer discrimination at the hands of any prospective employer who learns of her condition.  See Plaintiff's MOL at 12-14.  Plaintiff cites several cases from various jurisdictions which purportedly demonstrate that individuals with fibromyalgia and chronic fatigue syndrome are likely to suffer discrimination because of their conditions.  See id.  However, in the cases cited by plaintiff, the courts did not conclude that the plaintiffs therein had been discriminated against because of their condition, merely that an issue of fact existed as to whether or not such discrimination occurred.  See Weixel v. Bd. of Educ. of the City of New York, 287 F.3d 138, 148, 152 (2d Cir. 2002); Harding v. Cianbro Corp., 436 F. Supp. 2d 153, 169, 180-81 (D. Me. 2006); LaBrecque v. Sodexho USA, Inc., 287 F. Supp. 2d 100, 110-111 (D. Mass. 2003); Holt v. Olmsted Township Bd. of Trustees, 43 F. Supp. 2d 812, 825 (N.D. Ohio 1998).  In fact, in one of the cases relied on by plaintiff, the court expressly found that the plaintiff therein was not discriminated against because of her chronic fatigue syndrome.  See Tenbrink v. Federal Home Loan Bank, 920 F. Supp. 1156, 1164 (D. Kan. 1996).  Accordingly, plaintiff has articulated no

7

basis for concluding that an individual with fibromyalgia or chronic fatigue syndrome is likely to suffer discrimination because of her condition.

Plaintiff states that <u>Fleming</u> "stands for the proposition that when an individual alleges that private information was disseminated, without permission, and such information can expose said individual to impermissible discrimination, a cause of action is stated." <u>See</u> Plaintiff's MOL at 13. While plaintiff's interpretation of the court's decision in <u>Fleming</u> is misguided, the case is illustrative of the type of inquiry that courts must undertake in order to determine whether a particular medical condition is entitled to constitutional protection from disclosure. In <u>Fleming</u>, the court concluded that individuals with sickle cell anemia enjoyed a right of confidentiality in the status of their condition because of the documented history of discrimination against persons with the sickle cell trait. <u>See Fleming</u>, 502 F. Supp. 2d at 343. In particular, the court noted:

> In the 1970s, motivated in part by reports that workers suffering from sickle cell anemia might be uniquely susceptible to workplace toxins, some employers began conducting genetic screening of their employees. The result was discrimination not only against sickle cell anemia sufferers, but also against those who merely exhibited a genetic predisposition to develop the disease . . . .

<u>Id.</u> In fact, as the court stated, discrimination against individuals with sickle cell anemia was so prevalent that several state legislatures felt compelled to enact legislation expressly prohibiting discrimination against persons with the sickle cell trait. <u>See id.</u> Moreover, the court noted that the plaintiff therein was the victim of discrimination, as his prospective employer rescinded its job offer once it learned of plaintiff's condition. <u>See id.</u>

In the instant matter, plaintiff has cited no similar pattern of discrimination against individuals with either fibromyalgia or chronic fatigue syndrome. Rather, plaintiff has

identified a handful of cases in which courts found that individuals with fibromyalgia or chronic

fatigue syndrome could be deemed "disabled" within the meaning of the ADA, but did not find

that those individuals were discriminated against because of their disabilities.  See Plaintiff's

MOL at 12-14.  Additionally, unlike the plaintiff in Fleming, plaintiff does not allege that she

has been denied any positions by employers who learned of her fibromyalgia or chronic fatigue

syndrome, instead offering nothing more than mere speculation that such denials are

forthcoming.  See Matson Affidavit ¶¶ 17-18.  Thus, plaintiff has failed to demonstrate that

individuals with fibromyalgia or chronic fatigue syndrome are likely to experience

discrimination because of their condition.

Next, plaintiff suggests that the cases relied upon by defendants are irrelevant

because they involve prison inmates whose constitutional rights are necessarily limited.  See

Plaintiff's MOL at 16-19.  While it is true that the majority of the cases relied upon by

defendants involve prison inmates, this is due to the fact that the majority of the cases addressing

the right of confidentiality in one's medical condition are brought by incarcerated individuals.

Moreover, while an individual's status as a prisoner is relevant to the question of whether the

government had a legitimate penological interest in disclosing the condition, it is irrelevant to the

threshold question of whether the condition itself is sufficiently serious or unusual to warrant

constitutional protection.  See Powell, 175 F.3d at 110-13.  Accordingly, to the extent that the

cases relied upon by defendants address the issue of whether certain conditions are sufficiently

severe or private to warrant constitutional protection, they are certainly instructive and should be

given ample consideration by this Court.

Finally, plaintiff's right to confidentiality in her medical conditions cannot be

viewed in a vacuum and must be weighed against the government's interest in disclosing the

9

information in question.  See Doe, 15 F.3d at 269.  Here, the information regarding plaintiff's

medical condition was contained in a document prepared pursuant to defendant SCI's duty to

investigate and issue reports regarding corruption and misconduct by BOE employees.  See

Mayoral Executive Order 11, available at http://www.nycsci.org/public/Executive%20Order.pdf.

When this interest is weighed against the relatively innocuous nature of the information

disclosed, it is readily apparent that the conduct that plaintiff complains of does not rise to the

level of a constitutional violation.  See Pisciotti v. County of Wayne, 76 F. Supp. 2d 307, 310

(W.D.N.Y. 1999) (weighing the nature of the condition against the defendant's interest in

disclosing the information and concluding that "whatever interest that plaintiff had in

maintaining the secrecy of this information was insufficient to give rise to a violation of his

privacy rights").

## CONCLUSION

For the foregoing reasons, as well as those contained in defendants' initial memorandum of law dated January 16, 2009, defendants respectfully request that this Court grant their motion to dismiss the Complaint in its entirety and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            March 6, 2009

                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                 City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-122
                              New York, New York 10007-2601
                              (212) 788-0866
                              cseacord@law.nyc.gov


                    By:                  /s/
                              Christopher A. Seacord
                              Assistant Corporation Counsel

Mario Frangiose,
Christopher A. Seacord,
    Of Counsel.

11