```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 7, 2009
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
DORRIT MATSON,                                  :
                                                :
                      Plaintiff,                :    08 Civ. 7232   (PAC)
                                                :
        - against -                             :    MEMORANDUM ORDER
                                                :
BOARD OF EDUCATION OF THE CITY                  :
SCHOOL DISTRICT OF THE CITY OF NEW              :
YORK, THE CITY OF NEW YORK and                  :
RICHARD J. CONDON,                              :
                                                :
                      Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

This case demonstrates why it is difficult to run the New York City Department of Education ("DOE"). DOE has over 1.1 million students, who are taught in more than 1,400 schools by almost 100,000 teachers. The school population reflects the fact that New York City is still a city of immigrants and more than one-third of the students live in homes where English is not the primary language. They are speakers of Spanish, French, Chinese, Russian, Hindi, Bengali, Urdu, Korean, and Arabic, to mention just a few of the many languages. DOE has a budget of $17 billion and it has numerous collateral responsibilities. For example, its food program serves millions of breakfasts and lunches per week and it has more school buses than the bus fleet of the Metropolitan Transit Authority.

This brief recitation only hints at the scope and scale of the problems the DOE faces daily. Another problem is finding and retaining well-qualified teachers who appear at the appointed time to teach their students. Abuse of a generous sick leave policy by some is a continuing problem and a source of ongoing concern.

1

Plaintiff Dorrit Matson ("Matson") claims that Defendants Board of Education of the City School District of the City of New York ("BOE"), City of New York (the "City"), and Richard J. Condon ("Condon") violated her constitutional right to privacy by disclosing her medical information to the public.[1]  Matson was employed as a music teacher at Bayard Rustin Educational Complex ("Bayard Rustin"), a public school in Manhattan.  In January 2005, an assistant principal at Bayard Rustin informed Condon, the Special Commissioner of Investigation for the New York City School District ("SCI"), that Matson was improperly claiming sick leave in order to work as a conductor of a symphony orchestra.

Condon investigated the allegation and issued a report in August 2005 (the "Report") confirming that Matson had repeatedly taken sick leave on days when she conducted the New York Scandia Symphony.[2]  According to the Report, in November 2004, after Matson requested sick days, Bayard Rustin's principal told Matson he was

---

[1] In moving to dismiss Matson's Complaint, Defendants contend that BOE is not a proper party to this action.  They are correct.  BOE ceased to be the agency responsible for New York City's public schools before the incidents giving rise to the Complaint occurred.  Prior to 2001, BOE was a semi-autonomous agency that controlled the schools.  After 2001, control passed to the Mayor of the City of New York and BOE was stripped of its semi-autonomous status and renamed DOE.  DOE, however, would also not be an appropriate party to this action.  First, as a City agency, it cannot be sued in its own name.  See N.Y. City Charter Ch. 17 § 396 (2004) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.")  Second, the position held by Defendant Condon was established pursuant to an executive order of the Mayor, which authorized the appointment of "a Deputy Commissioner of Investigation for the City School District of the City of New York [], who will be independent from the [BOE], and will be responsible for the investigation of corruption, conflicts of interest, unethical conduct and other misconduct within the school district of the City of New York."  The City of New York, Office of the Mayor, Executive Order No. 11 (June 28, 1990), http://www.nycsci.org/public/executive%20order.pdf (emphasis added).  In other words, in investigating Matson and publishing the Report, Condon acted pursuant to authority granted to him by the City, independent of the DOE.  As such, Matson cannot allege any actions taken by DOE that would subject it to liability.

[2] On a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference as well as documents upon which the complaint relies and which are integral to the complaint."  Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).  The facts contained in this Memorandum Order are drawn not only from the Complaint but also from the Report, which is integral to the Complaint and upon which the Complaint relies.  The Report is attached as Exhibit A to the Declaration of Christopher A. Seacord, submitted in support of Defendants' motion to dismiss.

aware she was claiming sick time in order to conduct an orchestra. Matson nonetheless insisted that she was ill and would have to miss the concert. When the principal later confronted her with the fact that he knew she had conducted anyway—he heard the performance broadcast live on public radio—Matson asked the principal whether he "knew what it was like to conduct a concert ill." Of course, this is not an adequate response to an inquiry about sick leave. In February 2005, Matson applied for and was granted a leave of absence without pay. The leave of absence was based on a doctor's note that said she was experiencing fibromyalgia, a condition of unknown etiology; but said by those experiencing it to be painful and debilitating. The Report also noted that Matson took a number of sick days in order to receive therapy for a recurrent bacterial infection. It documented that on a number of occasions over a period of two years from 2003 to 2005, Matson claimed sick leave on days when she either rehearsed or conducted her orchestra. Indeed, she never missed a rehearsal or a performance.

The Report concluded that Matson abused the DOE's sick leave policy. Accordingly, it recommended that Matson's employment be terminated, and that she be directed to repay any salary to which she was not entitled. The Report was made available to the public on SCI's website and it became a story in the local press.

Matson does not challenge SCI's finding that she abused sick leave or its recommendation that she not be rehired; nor does she suggest that her medical condition was a disability which had to be accommodated. Instead she complains that her fibromyalgia was disclosed to the public through the Report and eventually reported in local newspapers, in violation of her privacy rights.[3] Matson seeks $2 million plus

---

[3] The Complaint does not attach the newspaper articles or contain quotes from them. An article about the Report is available, however, on the website of *The New York Times*. The headline says nothing about

3

attorney's fees.  She initiated this action on August 13, 2008, approximately three years after the publication of the Report.  Defendants moved to dismiss in January 2009.

When considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff."  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice….While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).  To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," i.e. facts that "nudge[] [the plaintiff's] claims across the line from conceivable to plausible…."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Matson's Complaint fails to state a claim upon which relief may be granted.  Although the constitutional right to privacy includes "the right to protection regarding information about the state of one's health," Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994), the right is not absolute and "the interest in the privacy of medical information will vary with the condition."  Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999).  To date, courts in the Second Circuit have recognized a constitutional right to

---

Matson's medical condition, but captures the substance of the report.  See Susan Saulny, Report Says Teacher, Out Sick, Led Orchestra, N.Y. Times, Aug. 18, 2005, available at http://www.nytimes.com/2005/08/18/nyregion/18teacher.html?scp=1&sq=%22dorrit%20matson%22&st=cse (last visited Aug. 5, 2009).  The article explains that "in a report issued yesterday by the special commissioner of investigation for New York City public schools, [Matson] is noted only as a music teacher who should be fired for repeatedly calling in sick, then heading to the concert stage."  Id.  In the final paragraph, the article notes that Matson "sought an unpaid leave…because she was suffering from chronic fatigue syndrome," the term the Report uses interchangeably with fibromyalgia.  Id.  Clearly, the article focused on Matson's abuse of the sick leave policy, not on the nature of her medical condition.

privacy with respect to only three types of medical conditions: HIV/AIDS, transsexualism, and sickle cell anemia.  Doe, 15 F.3d at 267 (HIV/AIDS); Powell, 175 F.3d at 112 (transsexualism); Fleming v. State Univ. of New York, 502 F. Supp. 2d 324, 343 (E.D.N.Y. 2007) (sickle cell anemia).  These conditions implicate the privacy right for two interrelated reasons.  First, the conditions are particularly serious.  See Doe, 15 F.3d at 267 (noting that HIV/AIDS is "a fatal, incurable disease"); Powell, 175 F.3d at 111 (describing transsexualism as a "profound psychiatric disorder" (quoting Maggert v. Hanks, 131 F.3d 670, 671 (7th Cir. 1997))); Fleming, 502 F. Supp. 2d at 342 (describing sickle cell anemia as "incurable…and it has the potential to be fatal…").  Second, individuals who reveal that they suffer from these serious conditions "potentially expose[] [themselves] not to understanding or compassion but to discrimination and intolerance, further necessitating the extension of the right to confidentiality over such information."  Doe, 15 F.3d at 267; see also Powell, 175 F.3d at 111 (recognizing that "transsexualism is the unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others"); Fleming, 502 F. Supp. 2d at 342-43 (discussing the documented history of workplace discrimination against individuals who suffer from or are genetically predisposed to developing sickle cell anemia).

      Matson's medical condition falls well below the level of seriousness that typically triggers the right to privacy.  Matson's Complaint does not dwell so much on her bacterial infection as it does on her fibromyalgia.  That is appropriate since the type of bacterial infection is not specified in the Report and it is apparently of limited duration and treatable through therapy.  (See Declaration of Christopher A. Seacord ("Seacord

Decl.") Ex. A at 2 n.2.)  As to fibromyalgia, it is said to cause "neck, shoulder[], and upper and lower back pain," but is not so disabling, according to Matson's doctor, as to prevent her from "conduct[ing] an orchestra…." (Id. Ex. A at 2.)  This inability to teach while maintaining the ability to move the arms, legs, neck, shoulders, and back—each a bodily movement associated with conducting—is explained by the fact that Matson would not be teaching: "she would be away from the environment which caused her the stress that resulted in the onset of the condition." (Id.)  Both of Matson's disclosed conditions are a far cry from the level of seriousness associated with HIV/AIDS, transsexualism, and sickle cell anemia.

Furthermore, Matson's Complaint does not allege that the public disclosure of her medical condition exposed her to discrimination, hostility, or intolerance.  In contrast to the plaintiff in Fleming, whose job offer was revoked when his would-be employer found out about his illness, 502 F. Supp. 2d at 343, Matson identifies no tangible harm that she suffered as a result of the Report being posted on SCI's website.[4]  Moreover, Matson cannot point to any history of discrimination against individuals with fibromyalgia that would lead the Court to conclude that she is likely to face discrimination, hostility, or

---

[4] In an affidavit submitted in opposition to Defendants' motion to dismiss, Matson contends that the disclosure of her medical information "has affected my ability to seek other employment, as potential employers, when 'googling' my name learn that I suffer from various ailments….It has led to a belief that I am 'unreliable' or 'undependable', that I would be absent, without adequate notice, thereby effecting [sic] the ability of an orchestra to perform up to expectations." (Affirmation of Barry D. Haberman ("Haberman Affirmation") Ex. 1 (Affidavit of Dorrit Matson) ¶ 17.)  An additional affidavit, submitted by a colleague of Matson's in the music industry, suggests that "[t]he public dissemination of [Matson's] medical condition has a severe impact upon [Matson] and the perception of the music world regarding [Matson] and possible employment….The perception is that [Matson], suffering from fibromyalgia and/or chronic fatigue syndrome would be unreliable and undependable…." (Haberman Affirmation Ex. 2 (Affidavit of Andrew Ackers) ¶¶ 8, 9.) These affidavits are unpersuasive for several reasons.  First, they contain new factual allegations that are not contained in the Complaint and are therefore improper for the Court to consider on a motion to dismiss.  Second, even if the Court were to consider the affidavits, their factual allegations are wholly conclusory and speculative.  Third, to the extent the Report might lead potential future employers to view Matson as unreliable or undependable, this would not be due to Matson's fibromyalgia—instead, it would be because the Report concludes that Matson shirked her work responsibilities at her full-time job by claiming sick leave in order to do work she preferred.

intolerance because of her condition.  The Fleming court, for example, recognized the well-documented history of workplace discrimination against individuals with sickle cell anemia.  Id. at 342-43.  This discrimination was so pervasive that "Congress passed a statute specifically requiring Veterans' Administration hospitals to maintain the confidentiality of records relating to sickle cell anemia" and "[s]everal states…adopted statutes expressly banning discrimination based on [the] sickle cell trait."  Id. at 343.  Here, Matson offers no evidence that discrimination against individuals with fibromyalgia is as severe and pervasive as discrimination directed towards transsexuals, individuals with HIV/AIDS, and individuals who possess the sickle cell trait.

Fibromyalgia has a drug therapy, Lyrica, which is regularly advertised on television alongside drug advertisements for everyday medical conditions such as high cholesterol, frequent urination, osteoporosis, acid reflux, and many other similar conditions.  It is not possible to say that these commonly advertised conditions—publicly and regularly targeted by the drug companies—carry a social stigma equivalent to HIV/AIDS, transsexualism, or sickle cell anemia.

Furthermore, plaintiffs with fibromyalgia routinely sue for ERISA benefits under their own names.  See, e.g., Hobson v. Metro. Life Ins., __ F.3d __, 2009 WL 2245215, at *1 (2d Cir. 2009); Magee v. Metro. Life Ins., __ F. Supp. 2d __, 2009 WL 1953438, at *3 (S.D.N.Y. 2009); Solomon v. Metro. Life Ins., __ F. Supp. 2d __, 2009 WL 1726335, at *2 (S.D.N.Y. 2009).  In Rankin v. New York Public Library, No. 98 Civ. 4821 (RPP), 1999 WL 1084224 (S.D.N.Y. Dec. 2, 1999), the court held that a plaintiff with fibromyalgia was not entitled to proceed as a "Jane Doe" because "there is no evidence in

the record that a social stigma is attached to Plaintiff's medical conditions in the same manner that one is attached to other medical conditions, such as AIDS." Id. at *1.

Fibromyalgia is simply not in the same league as those medical conditions which are entitled to the constitutional right to privacy. This is most certainly the case when it is being used as an excuse for not appearing for school and instead working another job.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Matson's Complaint is DISMISSED. The Clerk of the Court is directed to close this matter.

Dated: New York, New York
       August 6, 2009

SO ORDERED

PAUL A. CROTTY
United States District Judge